UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD BARCOMB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:16-cv-01884-SNLJ |
| | ) |
| GENERAL MOTORS LLC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant General Motors LLC.'s motion for summary judgment (#36). The issues have been fully briefed.[1] For the reasons set forth, this Court will **GRANT** the motion.

## I. BACKGROUND

This case presents an interesting issue of first impression regarding the scope of whistleblowing protection afford to employees in the automotive industry.

Plaintiff, Richard Barcomb, has brought a two-count complaint against GM alleging retaliatory discharge under federal law and wrongful termination under state law.

---

[1] Plaintiff's counsel is reminded to respect this Court's orders and the federal and local rules moving forward. Local Rule 7-4.01(D) limits counsel to fifteen pages for which to make legal arguments. This limit can be extended with leave of court. Plaintiff's counsel sought leave, requesting sixty-five pages to respond to GM's fifteen-page legal memorandum. (#44). This Court granted plaintiff's counsel a generous extension of thirty total pages. (#45). Despite this, plaintiff's counsel filed a thirty-one page memorandum (excluding the signature page) with twenty-one dense, single-spaced footnotes seemingly designed to bypass page limitations. In addition, plaintiff's counsel filed a ten-page "overview" as part of plaintiff's voluminous statement of facts that was largely argumentative and, again, appears designed to bypass page limitations. Though advocacy is appreciated, shrugging off this Court's orders as well as the mandates of both federal and local rules is not allowed and may lead to sanctions for noncompliance in the future.

Count I asserts a retaliatory discharge claim under Section 31307 of the Moving Ahead for Progress in the 21st Century Act (MAP-21), PL 112-141, 126 Stat 405, 765-769 (Jul. 6, 2012), codified as 49 U.S.C. § 30171, which protects employees who, among other things, are retaliated against for reporting information on motor vehicle defects. Count II alleges wrongful termination under Missouri's public-policy exception that, among other things, protects employees who are discharged for reporting violations of law—in this case, a violation of MAP-21. *See Margiotta v. Christian Hosp*. N.E. N.W., 315 S.W.3d 342, 347 (Mo. banc 2010). Count II essentially piggybacks off of Count I.

Plaintiff worked as a repairperson in the "final process repair" section of GM's Wentzville manufacturing plant. In essence, it was plaintiff's job to repair vehicles that came off the manufacturing line needing repairs due to errors occurring earlier in the manufacturing process. Sometime in January 2015, plaintiff began noticing that some jobs were coming into the final process repair section needing repairs that had already been confirmed as repaired in GM's "Global Standard Inspection Process" (GSIP) system. GSIP is an electronic system GM uses to track vehicles that need repairs to ensure they are repaired prior to the completion of the manufacturing process. A second redundancy system is also used, in which the same outstanding repairs are tracked on paper tickets.

Plaintiff states he "was concerned about repairs that had not been attempted at all and took serious issue with personnel who were trying to take credit for doing work they [had] not done[.]" So, he began a long, escalating process of making his concerns known to GM management and advised them that on occasion he, himself, ended up making the

2

repairs. Plaintiff was particularly alarmed by the possibility that cars left the manufacturing process and ended up in consumers' hands with defects caused by employees falsifying repair information in the GSIP system. Plaintiff did not, however, report any specific instances of vehicle defects to management. Rather, he focused his complaints on the misuse of the GSIP system as a whole and the false reporting by one co-worker in particular.

Plaintiff also grew concerned about other employees using a non-operating, industrial-sized bake oven (ordinarily used in the vehicle painting process) to "improperly store motor vehicle parts," some of which were apparently "obsolete" parts used to repair vehicles that came to the final process repair section. Plaintiff explains that other employees were using this oven as storage so that they wouldn't have to "run to another area of the plant" to obtain parts. Plaintiff began a long process of reporting this concern to GM management, as well.

Plaintiff then sets forth some 400 paragraphs of "material" facts suggesting numerous motivations for why GM management failed to address or otherwise did not want to address the issues going on at the Wentzville plant. However, having determined that MAP-21 does not apply to the misconduct plaintiff's co-employees were allegedly engaged in, and because plaintiff does not, therefore, state a cause of action under the statute, there is no need to address the pretext issue further.

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Courts repeatedly recognize that summary judgment is a harsh remedy that should be granted only when the moving party has established his or her right to judgment with

such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc*., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc*., 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the non-moving party must do more than show there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the non-moving party. *Robert Johnson Grain Co. v. Chem. Interchange Co*., 541 F.2d 207, 210 (8th Cir. 1976).

## III. ANALYSIS

This case comes down to a dispute about whether MAP-21 applies to whistleblowing on defects in motor vehicles that are still in the manufacturing process, even though those defects were later cured before the manufacturing process was completed. Section 30171(a)(1), which lays out the scope of any whistleblowing protection afforded to plaintiff, states in pertinent part:

> No motor vehicle manufacturer … may discharge an employee or otherwise discriminate against an employee … because the employee … provided, caused to be provided, or is about to provide …. *information relating to any motor vehicle defect*, noncompliance, or any violation or alleged violation of any notification or reporting requirement of this chapter.

49 U.S.C. § 30171(a)(1) (emphasis added).

GM contends plaintiff did not engage in protected activity under MAP-21 because MAP-21 necessarily pertains only to information related to defects in *manufactured* motor vehicles—that is, vehicles that have completed the manufacturing process. GM explains that "the vehicles about which plaintiff raised concerns were still being manufactured," and "even if needing repair, the vehicles coming to [plaintiff] were not 'defective' because their manufacture was not complete." Plaintiff's argument, as this Court understands it, is that the statute should be read broadly to encompass any defects that arise in the manufacturing process, even if they were later cured. He adds that he did report on a "motor vehicle defect" by "provid[ing] the name of a specific person whom he believed was engaged in false defect repairs: Bill Uptegrove." The point appears to be that this information falls within the purview of Section 30171(a)(1) because it could *lead* to a motor vehicle defect.

5

The parties thus limit their dispute to whether plaintiff—by complaining of the false reporting in the GSIP system that could *lead* to a defect—was, in fact, whistleblowing on a "motor vehicle defect." They do not argue about Section 30171's other prongs, i.e. whistleblowing on noncompliance (with the Chapter's mandates) or a violation of notification and reporting requirements. Furthermore, plaintiff appears to have abandoned the related issue of his "concerns that parts were being improperly stored in the bake oven," which GM maintains "is [also] a process-related concern that is not covered [by MAP-21]." Plaintiff made no argument at all in his opposing brief regarding the bake oven issue. As such, that issue has been waived. *City of Kennett, Mo. v. Environmental Protection Agency*, 887 F.3d 424, 430 (8th Cir. 2018) (deeming plaintiff's claim waived where it did not respond to defendant's arguments for summary judgment on that claim); *Satcher v. Univ. of Ark. At Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument").

Though no federal court appears to have addressed the scope of whistleblowing protection under MAP-21, a plain reading of its statutory language reveals it does not support plaintiff's claims regarding false reporting in the GSIP system. A "motor vehicle defect" is defined as "any defect in performance, construction, a component, or material of a motor vehicle or motor vehicle equipment." 49 U.S.C. § 30102(a)(3). The term "motor vehicle" is further defined—using past-tense language—as "a vehicle driven or drawn by mechanical power and *manufactured* primarily for use on public streets, roads, and highways[.]" 49 U.S.C. § 30102(a)(7) (emphasis added). Notably, the term "motor vehicle equipment" similarly utilizes past-tense language, defined as "any system, part, or

component of a motor vehicle as *originally manufactured* or any similar part or component *manufactured or sold* for replacement or improvement of a system, part, or component[.]" 49 U.S.C. § 30102(8)(A)-(B) (emphasis added). Moreover, the other prongs of Section 30171—such as whistleblowing on violations of the notification requirements—likewise refer to a post-manufacture time period. *See* 49 U.S.C. § 30171(a); 49 U.S.C. § 30118 (requiring a manufacturer to notify the Secretary of Transportation and the "owners, purchasers, and dealers" of a defective vehicle). In view of these provisions, MAP-21 seems to address only post-manufacture whistleblowing. But plaintiff, in effect, would have this Court rewrite the statute—expressly limited to "information relating to any motor vehicle defect"—so that it pertains to "information that *could lead to* any motor vehicle defect." The Court will not expand statutory language to say what it does not say. *See Argus Leader Media v. U.S. Dept. of Agriculture*, 740 F.3d 1172, 1176 (8th Cir. 2014) (noting that "Congress expresses its purpose by words. It is for courts to ascertain—neither to add nor to subtract, neither to delete nor to distort" and finding the district court erred by broadly interpreting a statute that said "obtained" to mean "can be obtained" in regards to the scope of a FOIA exemption).

Beyond the statutory language itself, is also difficult to surmise how, as a matter of common sense, a vehicle could be deemed legally "defective" prior to its completion. Errors presumptively occur quite regularly in an imperfect, man-made manufacturing process. Hence, GM saw fit to create the "final process repair" section, which has as its very purpose the goal of fixing these errors before a vehicle goes on the market. To call

such errors legally cognizable "defects" is counterintuitive. Indeed, the conventional notion of a "manufacturing defect" used in the context of products liability presumes the at-issue product "departs from its intended design," which can only occur when the product is completed (per design) and in the hands of consumers—else how can the product be said to depart from its design? "Manufacturing Defect," BLACK'S LAW DICTIONARY (10th ed. 2014). Because the focus of MAP-21 is on defects created by manufacturers, such as GM, it seems ill-advised to depart from the accepted definition of a manufacturing defect in other contexts.

> GM aptly sums up the situation:
>
> It would be a nonsensical result for every part of the manufacturing process to have worked perfectly only for [plaintiff] to be able to raise a protected complaint about a repair that it was his job to perform to ensure that the vehicle was not, in fact, defective when it was ready to ship. In other words, even if needing repair, the vehicles coming to [plaintiff] were not 'defective' because their manufacture was not complete. Instead, they were simply vehicles needing repair to ensure that they would not be defective by the time they were completed.

(Doc. #54, pp. 24-25).

In an effort to overcome that argument, plaintiff points to a single instance in which a completed motor vehicle was sold with a defect attributable to false reporting in the GSIP system by Uptegrove—he reported a repair to an "I-shaft bolt" that was never actually done. But this fact did not come to light until well after this case was filed. Plaintiff had not complained about any problem with this vehicle, so it could not have been a basis for his termination. All in all, the record shows, at most, that plaintiff complained in a general manner that the GSIP system was frequently subject to

8

fraudulent reporting and that Uptegrove was behind much of it. But that is a complaint about the GSIP system itself, rather than a complaint about a motor vehicle defect. It is not enough that the whistleblowing information given in this case could *lead* to a motor vehicle defect. Simply put, Plaintiff was whistleblowing about the dishonest conduct of a fellow employee, not about a motor vehicle defect as that term is statutorily defined. For this reason, summary judgment will be granted on Count I.

Finally, because Count I fails, so too must Count II fail, as they are inextricably linked. As noted, Missouri case law requires "a wrongful discharge action [to] be based on a constitutional provision, a statute, a regulation based on a statute, or a rule promulgated by a government body." *Margiotta*, 315 S.W.3d at 346. The statute to which plaintiff bases his wrongful discharge action on is the alleged violation of MAP-21. Having determined that there is no violation of MAP-21, there can be no wrongful discharge.

## IV. CONCLUSION

For the forgoing reasons,

**IT IS HEREBY ORDERED** that defendant General Motor LLC.'s motion for summary judgment (#36) is **GRANTED**. Judgement to follow.

So ordered this 23rd day of January 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE